1  MAYER BROWN LLP
   Anne M. Selin (SBN 270634)
2  aselin@mayerbrown.com
   Two Palo Alto Square, Suite 300
3  3000 El Camino Real
   Palo Alto, CA  94306-2112
4  Telephone:    (650) 331-2000
   Facsimile:    (650) 331-2060
5

6  Attorney for Plaintiffs Pacific Bell Telephone
   Company, BellSouth Telecommunications, LLC,
7  Illinois Bell Telephone Company, Indiana Bell
   Telephone Company, Incorporated, Nevada Bell
8  Telephone Company, The Ohio Bell Telephone
   Company, Southwestern Bell Telephone Company,
9  and Wisconsin Bell, Inc.

10
                    **UNITED STATES DISTRICT COURT**
11
                    **NORTHERN DISTRICT OF CALIFORNIA**
12

13  PACIFIC BELL TELEPHONE COMPANY,            Case No.
    BELLSOUTH TELECOMMUNICATIONS,
14  LLC, ILLINOIS BELL TELEPHONE               **COMPLAINT**
    COMPANY, INDIANA BELL TELEPHONE
15  COMPANY, INCORPORATED, NEVADA
    BELL TELEPHONE COMPANY, THE
16  OHIO BELL TELEPHONE COMPANY,
    SOUTHWESTERN BELL TELEPHONE
17  COMPANY, AND WISCONSIN BELL,
    INC.,
18
            Plaintiffs,
19
    v.
20
    88 CONNECTION CORPORATION AND
21  GANG ZHAO, A/K/A CHARLIE ZHAO,

22          Defendants.

23

24

25

26

27

28

Plaintiffs Pacific Bell Telephone Company ("Pacific Bell"), BellSouth Telecommunications, LLC ("BellSouth"), Illinois Bell Telephone Company ("AT&T Illinois"), Indiana Bell Telephone Company, Incorporated ("Indiana Bell"), Nevada Bell Telephone Company ("Nevada Bell), the Ohio Bell Telephone Company ("Ohio Bell"), Southwestern Bell Telephone Company ("Southwestern Bell"), and Wisconsin Bell, Inc. ("Wisconsin Bell"), collectively referred to as the "AT&T ILECs" and individually referred to as the names in quotes above and/or "AT&T ILEC," now file this Complaint seeking declaratory, injunctive, and monetary relief from Defendants 88 Connection Corp. ( "88 Connection") and Gang Zhao, also known as "Charlie Zhao" ("Zhao"), collectively referred to as "Defendants" and individually referred to by the names in quotes above, for damages that they have incurred since the United States District Court for the Southern District of California entered judgment against 88 Connection in an almost identical matter—*Pacific Bell Telephone Company, et al. v. 88 Connection Corporation,* Case Number 13-cv-1157-L-KSC (S.D. Cal. September 29, 2014).

1. This case involves Defendants' continued attempts to evade paying the AT&T ILECs the compensation federal law requires when Defendants' customers make long-distance telephone calls using the AT&T ILECs' network facilities.  The AT&T ILECs operate telecommunications networks in twenty (20) states, and give other long-distance telecommunications providers access to their networks so that the other long-distance telecommunications providers' customers can initiate calls.  In return for access to the AT&T ILECs' networks, long-distance telecommunications providers are required by law and the AT&T ILECs' federal tariffs to pay "switched access service" charges to the AT&T ILECs.  As detailed below, Defendants have implemented a scheme through which they disguise their customers' long-distance calls as local calls, which are not subject to switched access service charges, and thereby evade their obligations to pay the AT&T ILECs the compensation to which they are entitled.

2. The U.S. District Court for the Southern District of California has previously entered judgment for the AT&T ILECs and against Defendant 88 Connection for originating switched access charges incurred through August 31, 2013, and it has entered a permanent

injunction that requires 88 Connection to give the AT&T ILECs information they need to bill originating switched access charges incurred after August 31, 2013 – and to pay those bills. That judgment has been registered in this District. Nevertheless, 88 Connection has failed to satisfy the judgment and/or comply with the injunction. The AT&T ILECs intend to move for a finding that 88 Connection is in contempt, and to add Defendant Zhao to that judgment as the "alter ego" of 88 Connection. This suit is filed solely as a protective measure.

3. The AT&T ILECs request that the Court: (i) declare that Defendants are in violation of the FCC's orders and rules regarding access charges and in violation of the AT&T ILECs' lawful interstate tariffs; (ii) enjoin Defendants from further violations; (iii) order Defendants to provide an accounting of the access charges they have unlawfully evaded; and (iv) order Defendants to compensate the AT&T ILECs for their damages, including the recovery of access charges and applicable late payment charges that Defendants have unlawfully evaded. In further support of this Complaint, the AT&T ILECs state as follows:

**I.   THE PARTIES**

4. Pacific Bell Telephone Company ("Pacific Bell) is a California corporation and has its principal place of business in San Francisco, California. Pacific Bell is an incumbent local exchange carrier ("ILEC"), as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in California.

5. BellSouth Telecommunications, LLC ("BellSouth") is a Georgia corporation with its principal place of business in Atlanta, Georgia. BellSouth is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.

6. Illinois Bell Telephone Company is an Illinois corporation and has its principal place of business in Chicago, Illinois. Illinois Bell Telephone Company is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Illinois.

7. Indiana Bell Telephone Company, Incorporated ("Indiana Bell") is an Indiana

1  corporation and has its principal place of business in Indianapolis, Indiana. Indiana Bell is an
2  ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications
3  services and exchange access services in Indiana.

4         8.     Nevada Bell Telephone Company ("Nevada Bell") is a Nevada corporation and
5  has its principal place of business in Reno, Nevada. Nevada Bell is an ILEC, as defined by 47
6  U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access
7  services in Nevada.

8         9.     The Ohio Bell Telephone Company ("Ohio Bell") is a Ohio corporation and has its
9  principal place of business in Cleveland, Ohio. Ohio Bell is an ILEC, as defined by 47 U.S.C. §
10 251(h), and provides local exchange telecommunications services and exchange access services
11 in Ohio.

12       10.    Southwestern Bell Telephone Company ("Southwestern Bell") is a Delaware
13 corporation and has its principal place of business in Dallas, Texas. Southwestern Bell is an
14 ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications
15 services and exchange access services in Texas, Arkansas, Kansas, Missouri, and Oklahoma.

16       11.    Wisconsin Bell, Inc. ("Wisconsin Bell") is a Wisconsin corporation and has its
17 principal place of business in Milwaukee, Wisconsin. Wisconsin Bell is an ILEC, as defined by
18 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange
19 access services in Wisconsin.

20       12.    Defendant 88 Connection Corp. is a California corporation and has its principal
21 place of business in San Francisco, California. 88 Connection provides telecommunications
22 services and products, including prepaid and rechargeable calling card services.

23       13.    Upon information and belief, Defendant Gang Zhao, also known as Charlie Zhao,
24 is a citizen of the State of California and a resident of San Francisco, California. The AT&T
25 ILECs are further informed and believe and, based upon such information and belief, allege that
26 Zhao is now and was, at all times herein mentioned, the sole shareholder, Registered Agent, and
27 President of 88 Connection. Further, based upon such information and belief, at all times herein
28 mentioned, Zhao was not only the owner but also the "alter ego" of 88 Connection.

## II. JURISDICTION AND VENUE

14. This is a civil action arising under the laws of the United States, including Section 203 of the Communications Act, 47 U.S.C. §§ 151 *et seq*. The AT&T ILECs seek to enforce federal tariffs filed with the Federal Communications Commission ("FCC") pursuant to 47 U.S.C. § 203, as well as orders and rules entered by the FCC. This Court accordingly has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 47 U.S.C. § 207. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendants reside in this district within the meaning of 28 U.S.C. §1391(c) and (d) and/or because Defendants have agents and transact business in this district and/or because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. BACKGROUND

### A. Overview of Access Charges

15. The AT&T ILECs operate local exchange networks in designated service areas, originating, transporting, and terminating local telecommunications traffic (such as telephone calls between two persons in the same local area). In addition to carrying local calls, the AT&T ILECs also help long-distance carriers originate and complete their long-distance calls, as explained further below. In exchange for giving long-distance carriers "access" to their local networks to provide long distance call services, the AT&T ILECs are entitled to "switched access charges" by law and under their effective federal tariffs. Each AT&T ILEC's tariff describes Switched Access Service as a communications path between the end user and the access customer, through the AT&T ILEC's facilities or "plant." The AT&T ILECs' tariffs specify the various rate elements applicable to switched access service, priced on an *a la carte* basis.

16. When a customer makes a traditional long-distance (or "interexchange") call, he or she typically dials the number 1, followed by the "area code" for the number to be called, and then the seven-digit phone number. For example, a customer of Pacific Bell in San Francisco's 415 area code who wants to call someone in New York's 212 area code would dial "1-212-NXX¬XXXX" where "NXX-XXXX" is the desired phone number. The AT&T ILEC, in this example, Pacific Bell, then transports the call over its network to the point of presence ("POP") of

4

the calling customer's long-distance carrier for that area. From there, the long-distance carrier transports the interexchange call to its POP in the area of the called party. Then, it delivers the call to the local exchange carrier that serves the called party, and that carrier finishes delivering the call to the called party. The long-distance carrier bills the calling party for the call.

17. For such interexchange calls, long-distance providers are obligated to pay the local exchange carriers (*e.g*., the AT&T ILECs) international or interstate switched access charges at each end of the call, depending on the location of the calling and called parties. The local exchange carrier that serves the customer that placed or "originated" the call – in the above example, the customer in San Francisco who obtains local phone service from Pacific Bell – is entitled to "originating" switched access charges. Based on the San Francisco area code and phone number of the customer that originated the call, and the New York area code and phone number that the customer dialed, the local exchange carrier can tell it is a long-distance call and can bill the long-distance carrier for "originating switched access charges" to obtain compensation for the use of its network. (The local exchange carrier that serves the customer at the receiving end of the call in New York is entitled to "terminating" switched access charges. This Complaint, however, is concerned only with the originating switched access charges that Defendants evaded on the originating side of the call.)

18. *International* access charges apply to calls that begin (or "originate") in the United States and end (or "terminate") in a different country. The rates, terms, and conditions of the AT&T ILECs' international access charges are set forth in tariffs filed with the FCC.

19. *Interstate* access charges apply to calls that originate in one state and terminate in a different state, for instance the above-described call from a customer in San Francisco, California, to a person in New York. The rates, terms, and conditions of the AT&T ILECs' interstate access charges are set forth in tariffs filed with the FCC.

**B.    Prepaid Calling Card Services**

20. Defendants provide long-distance phone service through prepaid calling card services, which allow, among other things, a customer to pay in advance for long-distance calls.

21. Defendants' calling card services employ a prepaid debit system: a customer purchases a "card" with a specific balance and the cost of any call is then deducted from this balance. From the perspective of the end user, a long-distance call made via Defendants' prepaid calling card services is functionally the same as a traditional long-distance call: in each case, the customer makes a call to a home or business in a different state or country. A prepaid calling card call reaches that result in the following way. First, the customer gains access to the calling card service provider's platform, traditionally by dialing a toll-free (*e.g.* 1- 800) number. Once the customer is connected to the calling card service provider's platform, the customer is typically prompted to enter a personal identification number in order to authenticate the card and the available balance. After this validation, the customer dials the number of the party he or she wants to call. Typically, prepaid calling card services are used for long-distance or international calls. Further, because the customer dials a number beginning "1-800" the local exchange carrier knows that access charges are applicable.

22. Access charges apply to "1-800" calls in the same way they apply to traditional long-distance calls. While 1-800 calls are "toll-free," because the person placing the call does not receive a separate long-distance charge for that call on his or her bill, they are not literally "free." The long-distance provider simply receives its revenue in a different way. In this case, the long-distance providers (*e.g.* Defendants) receive their revenue up front, when the customer pays for the prepaid calling card service. Likewise, the local service provider (*e.g.* one of the AT&T ILECs) still incurs costs to provide network access to the long-distance provider, and is still entitled to compensation from the long-distance provider.

23. Just as with a traditional long-distance call, the AT&T ILEC provides originating switched access services for prepaid calls of the type offered through Defendants' services. The AT&T ILEC transports the call from its starting point (the phone used by the calling customer to place the call) to the point of interconnection ("POI") between Pacific Bell (or another AT&T ILEC) and the carrier to which the telephone number dialed is assigned. After Pacific Bell (or another AT&T ILEC) hands off the call at the POI, the call is handled by that carrier and the long-distance calling card provider so that the calling customer can make a long-distance call

6

COMPLAINT

through the calling card service provider's platform.  In return for providing this "access" and use of its network, Pacific Bell (and any other AT&T ILEC providing the use of its network) is entitled by law and its effective federal tariffs to receive compensation, in the form of originating switched access service charges, from the long-distance calling card service provider.

### C. **FCC Orders**

24. The FCC has made clear that all calling card service providers must pay the tariffed access charges for their customers' long-distance calls.  In a February 2005 order, the FCC stated that a particular prepaid calling card service was a "telecommunications service" as defined by the Telecommunications Act of 1996.  *AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 FCC Rcd. 4826, ¶ 14 (rel. Feb. 23, 2005).  The FCC then initiated rulemaking to consider more generally the classification and jurisdiction of "new forms of prepaid calling cards." *Id.* at ¶ 2.

25. After receiving additional evidence and comments, the FCC decided that "all" prepaid calling card providers must pay the applicable interstate or intrastate access charges on long-distance calls made via their platforms.  *In re Regulation of Prepaid Calling Card Services*, 21 FCC Rcd. 7290, ¶¶ 1, 27 (rel. June 30, 2006).  In particular, the FCC held that interstate access charges apply when a call made via a calling card originates in one state and terminates in another, while intrastate access charges apply when a call made via a calling card originates and terminates in different areas within the same state. *Id.* ¶ 27.  The FCC issued this straightforward rule in order to eliminate any "incentives for [calling card service] providers to reduce exposure to charges they may owe or evade them altogether." *Id*. ¶ 8.  Moreover, the FCC wanted to provide "a level regulatory playing field for calling card providers," so that providers could not engage in a "'gaming' of the system" and gain an unfair advantage by rigging their service to evade access charges. *Id.*

26. The FCC expressly addressed "the logistics of requiring *all* prepaid calling card service providers to pay intrastate and interstate access charges," so that "calling card providers and their underlying carriers" would not have the "ability to avoid intrastate access charges." *Id.* at ¶¶ 27, 31.  The FCC resolved those logistical issues by establishing "certification and reporting

7

COMPLAINT

requirements … to ensure compliance with our existing access charge rules." *Id.* ¶ 31. These certification and reporting requirements extend to "*all* prepaid calling card providers" (*id.* ¶ 1), providing further confirmation that the underlying access charge rules likewise apply to all providers.

**D.     Defendants' Attempts to Game the System and Avoid Compensating the AT&T ILECs through Access Charges**

27.     Notwithstanding the FCC's clear requirement that "all" calling card service providers must pay access charges, Defendants have used the AT&T ILECs' networks for their customers' long-distance calls without paying the AT&T ILECs the required access charges. Defendants have avoided paying access charges by disguising certain long-distance calls as local calls.

28.     Defendants sell calling card services that use telephone numbers that are considered "local" in the area in which those cards are sold (rather than the traditional 1-800 numbers) so that its customers can originate international and/or interstate interexchange prepaid calling card calls to their calling card platforms.  The local phone numbers are assigned to Defendants by competing local exchange carriers ("CLECs") that provide local exchange telecommunications service within the AT&T ILECs' service areas.  In this manner, calls made through Defendants' calling card services appear to be local calls.  Accordingly, the AT&T ILECs route calls made to the calling card's local telephone number over local interconnection facilities to the CLEC from which Defendants obtained the local telephone number.  For example, a San Francisco customer with a 415 area code might place a call to New York from a phone line provided by Pacific Bell by dialing a platform number that also begins with a 415 area code. While the call is in reality an interstate long-distance call to New York, it would look to Pacific Bell like a local call from one San Francisco phone to another San Francisco phone.  Thus, Pacific Bell would transmit the call to the CLEC through which the call is transported to Defendants' calling card platform, but not charge Defendants for originating switched access services, because it does not know the true non-local destination of the call.

29.     Defendants have, at a minimum, constructively ordered access service from Pacific Bell, as well as all the other AT&T ILECs' effective tariffs.  Either directly or through CLECs, Defendants offer service and are interconnected with Pacific Bell's network, as well as the other AT&T ILECs' networks, in such a way that they can expect to receive calls that originate on Pacific Bell's network (and thus, originating switched access service), as well as the other AT&T ILECs' networks.  As far as the AT&T ILECs are aware, Defendants have not taken steps to prevent the receipt of calls originating on the AT&T ILECs' networks (and in fact, solicit end users generically and without any apparent limitations to avoid the receipt of such calls) or to prevent the receipt of originating switched access services from the AT&T ILECs. Moreover, Defendants have in fact received calls that originate on Pacific Bell's network (as well as the other AT&T ILECs' networks), and have in fact received originating switched access services from Pacific Bell (as well as the other AT&T ILECs).

30.     Defendants' use of locally assigned numbers has prevented the AT&T ILECs from determining that calls that appeared to be local calls were in fact long-distance calls.  Because Defendants' use of "local" numbers led the AT&T ILECs to believe that the calls were local in nature, the AT&T ILECs routed the calls over local interconnection trunks to other local carriers, and were unable to bill Defendants for the applicable access charges required by law.  This is precisely the type of "'gaming' of the system" that the FCC sought to prevent in its calling card orders.  *In re Regulation of Prepaid Calling Card Services*, ¶ 8.

31.     Defendants' use of "local" numbers has prevented the AT&T ILECs from determining the full extent of the access charges Defendants were able to evade.

### E.     Federal Court Rulings

32.     This case is not the first time the federal courts have been confronted with a prepaid calling card service provider who tried to use "local" access numbers to evade access charges.  The United States District Court for the Northern District of Texas has held that "prepaid calling card providers who utilize LANs ... are responsible for access charges" under federal law.  Order, *Southwestern Bell Tel. Co. v. IDT Telecom, Inc.*, Case No. 3-09-cv-01268-P (March 9, 2012) (J. Solis) at 10.  As the district court recognized, the FCC's 2006 order "provides

courts with interim rules applicable to 'all prepaid calling card providers.'" *Id.*  The court concluded: "it is clear that until the FCC provides further guidance, all prepaid calling card providers are to be treated as telecommunications service providers, and therefore, they are responsible for access charges." *Id.*; *see also id.* at 11 ("[t]he 2006 Order's interim rules state 'all' prepaid calling cards that provide telecommunications services are subject to these rules. Therefore, the interim rules apply to the traffic at issue in this case."). The Court accordingly granted Southwestern Bell (among other plaintiffs) partial summary judgment on liability.

33. The Court reaffirmed these holdings in a subsequent decision granting partial summary judgment on liability against another prepaid calling card provider. Order, *Southwestern Bell Tel. Co. v. Touch-Tel USA, LLC*, Case No. 3-10-cv-01642-P (Dec. 14, 2012)

### F. Prior Lawsuit against 88 Connection and 88 Connection's Failure to Comply with Court Orders

34. On or about May 15, 2013, the AT&T ILECs[1] instituted an almost identical lawsuit against 88 Connection in the United States District Court for the Southern District of California, Case No. 13-cv-1157-L (KSC).[2]

35. On January 4, 2014, the Court entered an Order granting in part, denying in part, and holding in abeyance Plaintiff's Motion for Default Judgment.  Specifically, the Court granted Plaintiffs' motion for default judgment in the amount of $4,013,459, covering originating switched access charges incurred through August 31, 2013.  As to Plaintiffs' request for injunctive relief, the Court held decision in abeyance until January 30, 2014, so that Plaintiffs could file a supplemental brief in support of such relief.

36. On January 30, 2014, the Plaintiffs filed their Supplemental Brief in Support of Plaintiffs' Request for a Permanent Injunction Against Defendant 88 Connection Corporation.

---

[1] The plaintiffs in that lawsuit included The Southern New England Telephone Company ("SNET"), which operated in Connecticut.  Since that time, SNET was acquired by Frontier Communications Corporation. SNET is no longer affiliated with the AT&T ILECs and is not a party to this suit.
[2] At the time that the AT&T ILECs instituted that lawsuit, they did not name Zhao as a defendant.

10

1  37. On August 14, 2014, the Court entered an Order Granting Permanent Injunction.
2  The Court ordered Defendant 88 Connection to:

3     a. Provide the AT&T ILECs, on or before September 30, 2014, with a
4     complete list of local access numbers that it has utilized in its prepaid calling card
5     business since August 30, 2013, within the AT&T ILECs' 21 states, as well as a notarized
6     statement certifying that the list is complete, true, and accurate.

7     b. Provide the AT&T ILECs with a list of local access numbers it has used
8     within the previous quarter on a prospective basis, on December 31, March 31, June 30,
9     and September 30 of each year with respect to the AT&T ILECs' 21 states and to
10     accompany such list with a notarized statements certifying that they are complete, true,
11     and accurate.

12     c. Provide the AT&T ILECs with all billing information reasonably
13     requested, including but not limited to 88 Connections' contact information (including e-
14     mail addresses and telephone numbers), billing address information, state and/or federal
15     tax exempt forms, billing account information, and similar information in order for the
16     AT&T ILECs to bill 88 Connection for originating switched access charges.

17     d. Provide updates for all billing information within ten days of any such
18     information becoming inaccurate.

19     e. Pay the bills that the AT&T ILECs render to 88 Connection for originating
20     switched access charges no later than the date set forth in each bill.

21  38. 88 Connection neither satisfied the judgment nor complied with any requirement
22  of the permanent injunction.

23  **G.** **<u>Zhao Is the Alter Ego of 88 Connection</u>**

24  39. Based on information obtained in post-judgment discovery, Zhao controlled,
25  dominated, and operated 88 Connection as his individual business and alter ego.

26  40. The activities and business of 88 Connection was carried out without a Board of
27  Directors and/or Board of Directors' meetings and Zhao was its sole shareholder.

28

41. 88 Connection is, and at all times herein mentioned, was a mere shell and sham without adequate working capital, assets, stock, or stockholders.

42. 88 Connection was conceived, intended, and used by Zhao as a device to avoid individual liability and for the purpose of substituting an inadequately capitalized corporation in place of himself.

43. Upon information and belief, at all times herein mentioned herein, there has existed, a unity of ownership between 88 Connection and Zhao such that any separateness has ceased to exist in that Zhao used assets of 88 Connection for his personal use, caused assets of 88 Connection to be transferred to him without adequate consideration, withdrew funds from 88 Connection's bank accounts, and charged expenses to 88 Connection's credit cards for his personal use.

44. 88 Connection is, and at all times mentioned herein was, a mere shell, instrumentality, and conduit through which Zhao carried on his business in the name of 88 Connection exactly as he conducted it previous to incorporation exercising complete control and dominance of such business to such an extent that any individuality or separateness of 88 Connection and Zhao does not now, and at any time herein mentioned did not, exist.

45. Zhao diverted assets from 88 Connection to himself to the detriment of the AT&T ILECs.

46. Under the circumstances outlined above, it would be inequitable not to pierce the corporate veil.

**IV. CLAIMS ASSERTED**

### COUNT I

**(VIOLATION OF FEDERAL TARIFFS)**

47. The AT&T ILECs incorporate by reference as though fully set forth herein the allegations of the preceding paragraphs of this Complaint.

48. The AT&T ILECs' rates, terms, and conditions for switched access service charges for interstate and international long-distance calls are set forth in effective tariffs filed with the FCC. Pursuant to those tariffs, for each interstate or international long-distance call originated by an AT&T ILEC end user to Defendants' calling card platform, the AT&T ILEC has provided a two-point communications path between Defendants' premises and the AT&T ILEC's end user's premises through the AT&T ILEC's network plant. Without that two-point communications path, Defendants would not have received any calls originating from the many end-user premises on the AT&T ILECs' networks.

49. Defendants have at a minimum constructively ordered access service from the AT&T ILECs' effective tariffs.

50. For the reasons set forth above, and pursuant to the FCC's decisions and the AT&T ILECs' effective federal tariffs, Defendants are liable to the AT&T ILECs for their failure to pay switched access service charges on international and interstate interexchange traffic that originated on the AT&T ILECs' networks using Defendants' prepaid calling cards.

51. The AT&T ILECs fully performed their relevant obligations under their federal tariffs, except those they was prevented from performing, those they were excused from performing, or those that were waived by Defendants' misconduct as alleged herein.

52. Defendants have not paid the AT&T ILECs for interstate and international switched access services in accordance with the AT&T ILECs' effective federal tariffs and the FCC's order on calling card services.

53. Defendants have materially violated the AT&T ILECs' federal tariffs and the FCC's order on calling card services by avoiding payment of the tariffed rates for the services Defendants used.

54. The AT&T ILECs have been damaged in an amount to be determined by this Court.

55. The AT&T ILECs are entitled to an accounting by Defendants to determine the amount of damages, as only Defendants know the full extent of the originating switched access charges Defendants have avoided through their unlawful actions.

Case 3:15-cv-04554-LB   Document 1   Filed 10/02/15   Page 15 of 15

## **PRAYER FOR RELIEF**

WHEREFORE, the AT&T ILECs requests the following relief:

(a) Declaratory relief finding that Defendants are in violation of the FCC's orders regarding access charges and in violation of the AT&T ILECs' effective international and/or interstate tariffs;

(b) Preliminary and permanent injunctive relief enjoining Defendants from continuing to engage in the misconduct complained of;

(c) A full accounting of the number of interexchange minutes improperly disguised as local traffic that should have been treated as long-distance access traffic, and for which Defendants should have paid international and/or interstate switched access service charges but evaded payment;

(d) Monetary damages (or in the alternative, restitution) in the amount of the international and/or interstate switched access service charges (including interest and late payment fees) that the AT&T ILECs are entitled to pursuant to their lawful federal tariffs and which Defendants have failed to pay; and

(e) Such other and further relief for the AT&T ILECs as the Court finds reasonable under the circumstances.

Dated: October 2, 2015                    MAYER BROWN LLP

By: /s/ *Anne M. Selin* _____
    Anne M. Selin

Attorney for Plaintiffs Pacific Bell Telephone Company, BellSouth Telecommunications, LLC, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Nevada Bell Telephone Company, The Ohio Bell Telephone Company, Southwestern Bell Telephone Company, and Wisconsin Bell, Inc.

14

COMPLAINT