1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10              San Francisco Division

11 PACIFIC BELL TELEPHONE COMPANY,          Case No.  15-cv-04554-LB
   et al.,
12
                  Plaintiffs,
13                                           **ORDER DENYING MOTION TO
          v.                                 DISMISS**
14
   88 CONNECTION CORPORATION, et al.,        [Re: ECF No. 19]
15
                  Defendants.
16
                              **INTRODUCTION**
17
        This is a commercial dispute over unpaid regulatory fees. The plaintiffs are regional
18
   telecommunications companies who claim that the defendants owe them access charges for
19
   routing long-distance calls over the plaintiffs' networks. The Federal Communications
20
   Commission allegedly makes such charges mandatory. The plaintiffs also seek to hold the
21
   individual defendant, Mr. Gang Zhao, personally liable for the fees that the corporate defendant,
22
   88 Connection Corporation, has not paid. The plaintiffs allege that Mr. Zhao and 88 Connection
23
   are "alter egos," so that 88 Connection's separate corporate existence should be disregarded, and
24
   Mr. Zhao held personally liable for the unpaid charges. (*See generally* Compl. – ECF No. 1.)[1]
25
26
27 ───────────────
   [1] Record citations are to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated
28 page numbers at the top of documents.

United States District Court
Northern District of California

1     The defendants now move under Rule 12(b)(6) to dismiss the claim against Mr. Zhao. (ECF

2  No. 19.) They argue that the complaint does not sufficiently allege alter-ego liability. The parties

3  have consented to magistrate jurisdiction. (ECF Nos. 9, 21.) This motion can be decided without

4  oral argument. *See* Civil L.R. 7-1(b). The court holds that the plaintiffs have alleged a "plausible"

5  alter-ego theory and denies the defendants' motion.

6

7                                      **STATEMENT**

8  **1.  The Basic Dispute**

9     The basic dispute can be stated briefly. The plaintiffs operate regional telecommunications

10  networks in 20 states.[2] Other telecommunications providers can access the plaintiffs' networks, so

11  that their own customers can initiate long-distance calls.[3] When other providers route long-

12  distance calls over the plaintiffs' networks, federal regulations require them to pay the plaintiffs

13  "switched-access service charges."[4]

14     The defendants sell prepaid calling cards. Their customers' long-distance calls sometimes

15  travel over the plaintiffs' networks.[5] The plaintiffs allege that the defendants "disguise their

16  customers' long-distance calls as local calls" to avoid paying the access charges.[6] They also claim

17  that the corporate defendant, 88 Connection, and the individual defendant, Mr. Zhao — who is

18  said to be 88 Connection's president and sole shareholder — are "alter egos" of one another.[7] The

19  plaintiffs thus seek to "pierce the corporate veil" of 88 Connection and hold Mr. Zhao personally

20  liable for the unpaid access fees.[8] The defendants' present motion to dismiss challenges the

21  complaint's alter-ego allegations.

22

23  ――――――――――――――――――

24  [2] Compl. – ECF No. 1 at 2-4.

     [3] *Id.* at 5-6 (¶¶ 15-17).

25  [4] *Id.* at 8-9 (¶¶ 24-26).

26  [5] *Id.* at 4 (¶¶ 12-13), 6-8 (¶¶ 20-23).

     [6] *E.g., id.* at 2 (¶ 1), 9-10 (¶¶ 27-31).

27  [7] *E.g., id.* at 4 (¶ 13), 12-13 (¶¶ 39-46).

28  [8] *See id.*

*United States District Court*
*Northern District of California*

**2.   The Prior Lawsuit**

The plaintiffs brought an "almost identical" suit against 88 Connection in 2013 in the Southern District of California.[9] The plaintiffs obtained a default judgment in that case.[10] The judgment found 88 Connection liable to the plaintiffs for over $4 million in unpaid access charges.[11] The Southern District also entered a permanent injunction prospectively ordering 88 Connection to account for calls that would trigger access charges and to pay those charges in a timely manner going forward.[12] According to the complaint, "88 Connection neither satisfied the judgment nor complied with any requirement of the permanent injunction."[13] Though the plaintiffs never say so directly, the latter allegation and the nature of their claim suggest that the defendants may have continued to route long-distance calls over the plaintiffs' networks, without paying the mandatory access charges, after the Southern District's judgment.

Mr. Zhao was not an individual party to the 2013 suit.[14] The plaintiffs say that they will seek to add him as a defendant in that lawsuit.[15]

**3.   The Alter-Ego Allegations**

The defendants now move to dismiss the complaint — or, more accurately, that part of the complaint that is directed against Mr. Zhao — arguing that the plaintiffs have not alleged a plausible claim for alter-ego liability.[16] The complaint's central alter-ego allegations are summarized as follows:

- Mr. Zhao "controlled, dominated, and operated 88 Connection as his individual business";

---

[9] *Id.* at 11-12 (¶¶ 34-38).

[10] *Id.* at 1, 11-12.

[11] *Id.* at 11 (¶ 35).

[12] *Id.* at 12 (¶ 37).

[13] *Id.* at 12 (¶ 38).

[14] *Id.* at 11 (¶ 34) and n. 2.

[15] ECF No. 22 at 6.

[16] *See, e.g.,* ECF No. 19 at 2.

- "The . . . business of 88 Connection was carried out without a Board of Directors . . . [or directors'] meetings and Zhao was its sole shareholder";

- 88 Connection is and was "a mere shell and sham without adequate working capital, assets, stock, or stockholders";

- Mr. Zhao used 88 Connection "as a device to avoid individual liability and for the purpose of substituting an inadequately capitalized corporation in place of himself";

- At all relevant times, "there has existed, a unity of ownership between 88 Connection and Zhao such that any separateness has ceased to exist in that Zhao used assets of 88 Connection for his personal use, caused assets of 88 Connection to be transferred to him without adequate consideration, withdrew funds from 88 Connection's bank accounts, and charged expenses to 88 Connection's credit cards for his personal use";

- Mr. Zhao "diverted assets from 88 Connection to himself to the detriment of the" plaintiffs; and

- "Under the circumstances outlined" in the complaint, "it would be inequitable not to pierce the corporate veil."[17]

## GOVERNING LAW

### 1.  Alter Ego (Piercing the Corporate Veil) — Elements

"There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." *Mesler v. Bragg Mgmt. Co.,* 39 Cal. 3d 290, 300 (1985). "The California Supreme Court ha[s] advocated a flexible approach to applying the alter-ego doctrine, and has adopted two general requirements: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) that, "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Polite v. United States*, 2012 WL 965996, *9 (S.D. Cal. Mar. 21, 2012) (citing *Mesler,* 39 Cal. 3d at 300) (citing in turn *Automotriz del Golfo de Cal. S.A. de C.V. v. Resnick,* 47 Cal. 2d 792, 796 (1957)); *accord, e.g., Sonora Diamond Corp. v. Superior Court of Tuolumne*

---

[17] *See* Compl. – ECF No. 1 at 12-13 (¶¶ 39-46).

*County*, 83 Cal. App. 4th 523, 538 (2000). Among the factors to be considered in applying this doctrine are:

> [c]ommingling of funds and other assets[;] . . . the unauthorized diversion of corporate funds or assets to other than corporate uses; . . . the treatment by an individual of the assets of the corporation as his own; . . . the failure to maintain minutes or adequate corporate records . . . ; sole ownership of all of the stock in a corporation by one individual . . . [;] the failure to adequately capitalize a corporation; . . . the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; . . . the disregard of legal formalities . . . . [;] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors . . . [;] the use of a corporation as a subterfuge of illegal transactions . . . .

*Leek v. Cooper*, 194 Cal. App. 4th 399, 417 (2011) (quotation omitted). These factors are "not exhaustive." *Id.* at 418. Others may be considered "under the particular circumstances of each case." *Id.* (citing *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*, 69 Cal. App. 4th 223, 249-50 (1999) and *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962)).

This doctrine exists to hold accountable those who misuse the corporate form to carry out wrongdoing. It is not limited to fully blown intentional fraud. The California Court of Appeals has said:

> Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some ***other wrongful or inequitable purpose***, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation . . . . The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud *or **other misdeeds***.

*Sonora Diamond*, 83 Cal. App. 4th at 538 (citations omitted) (emphases added). Finally — and ancillary language in some cases notwithstanding — the corporation need not be *formed for the purpose of wrongdoing*. Malfeasance need not be its *raison d'être*. It is enough (assuming the doctrine is otherwise satisfied) that the corporation is *used* to carry out some misdeed. In the California Supreme Court's words:

> The issue is not so much whether . . . the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether in the particular case presented and for the purposes of such

> case justice and equity can best be accomplished and fraud and unfairness defeated
> by a disregard of the distinct entity of the corporate form. . . . The law of this state
> is that the separate corporate entity will not be honored where to do so would be to
> defeat the rights and equities of third persons.

*Mesler,* 39 Cal. 3d at 300-01 (quotation omitted).

## 2.   Pleading Standards — Rules 8(a)(2) and 12(b)(6)

"On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." *Chavez,* 683 F.3d at 1108 (quoting *Twombly,* 550 U.S. at 555). Indeed, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez,* 683 F.3d at 1108 (citing *Iqbal,* 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez,* 683 F.3d at 1108-09 (citing *Iqbal,* 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Chavez,* 683 F.3d at 1108-09 (quoting *Iqbal,* 556 U.S. at 679).

The background rule here is Rule 8(a)(2), which states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s "pleading standard . . . does not require 'detailed factual allegations,'" even after *Iqbal* and *Twombly*, and "'[s]pecific facts are not necessary' for pleadings to satisfy Rule 8(a)(2)." *Iqbal*, 556 U.S. at 678 ("detailed"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) ("specific") (quoting *Erickson v. Pardus,* 551 U.S. 89 (2007)). "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).

United States District Court
Northern District of California

1

United States District Court
Northern District of California

**ANALYSIS**

The defendants do not directly attack against the complaint's "unity of interest" allegations. They argue instead that the plaintiffs have not sufficiently pleaded bad faith or fraudulent intent — *i.e.,* that the defendants acted with bad faith in (putatively) misusing the corporate form. And they argue that the complaint does not sufficiently plead facts showing that treating the challenged acts "as those of the corporation alone" would yield an "inequitable result." The court has weighed the defendants' analysis carefully but disagrees on both counts.

**1.  Bad Faith & Fraudulent Intent**

The defendants argue that the plaintiffs have not pleaded facts showing that the defendants acted in "bad faith" or with "fraudulent intent." (*E.g.,* ECF No. 19 at 12, 15, 17 [bad faith]; ECF No. 25 at 4, 7, 13 [fraudulent intent].) The defendants contend that such allegations are necessary to pleading a viable alter-ego theory. (*See id.*)

It is not clear that they are necessary. Some cases do describe alter-ego liability as entailing "conduct amounting to bad faith." *See Leek*, 194 Cal. App. 4th at 418 (citing *Sonora Diamond*, 83 Cal. App. 4th at 539). But the bulk of case law seems to omit or even expressly disavow a bad-faith or fraudulent-intent requirement. In a 2013 alter-ego decision, for example, the California Court of Appeals held:

> The trial court erred in requiring [the plaintiff] to prove that the [defendants] acted with wrongful intent. The law does not require such proof. [The plaintiff] was required to prove that the [defendants'] acts caused an "inequitable *result*." [(*Greenspan v. LADT LLC,* 191 Cal. App. 4th 486, 511 (2010)]. . . . [T]he [defendants'] intent is beside the point.

*Relentless Air Racing, LLC v. Airborne Turbine Ltd.*, 222 Cal. App. 4th 811, 816 (2013) (emphasis in *Relentless Air Racing*). The Southern District of California reviewed this topic in 2012 and, citing both Ninth Circuit and California Supreme Court precedent, likewise concluded that alter-ego liability does not require bad faith:

> [T]he California Supreme Court has declared that it is not necessary that the party asserting the alter-ego theory prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice. *Gordon v. Aztec Brewing,* 33 Cal. 2d 514, 203 P.2d 522, 526 (Cal. 1949). The later alter-ego cases from the

> California Supreme Court, namely *Mesler* and *Resnick,* are silent on whether bad
> faith or fraud must be proven in order to satisfy the second prong of the alter-ego
> doctrine, though neither required such a showing. *See Mesler,* 216 Cal. Rptr. 443,
> 702 P.2d at 600-07; *Resnick,* [47 Cal. 2d at 795-98]. The Ninth Circuit has
> recognized *Mesler* and *Resnick* and has applied them without requiring a showing
> of fraud or bad faith.

*Politte*, 2012 WL 965996 at *11 (footnotes omitted) (citing *S.E.C. v. Hickey,* 322 F.3d 1123, 1129

(9th Cir. 2003) (citing *Mesler* and not requiring a showing of bad faith); *Orloff v. Allman,* 819 F.2d

904, 908-09 (9th Cir. 1987) (citing *Resnick* and stating that "[n]o specific finding of bad faith is

required"); *RRX Indus. v. Lab–Con,* [*Inc.,*] 772 F.2d 543, 545 (9th Cir. 1985) (citing *Resnick* and

stating that "[a] finding of bad faith, however, is not a prerequisite to the application of the alter-

ego doctrine under California law.")).[18]

   This court is bound by the Ninth Circuit's view of California law, as expressed in *Orloff* and

*RRX*, that bad faith is not an alter-ego requisite. The court need go no further into the matter now.

Even if bad faith is necessary to a viable alter-ego theory, the plaintiffs have sufficiently pleaded

facts that would allow a fact-finder "to draw the reasonable inference" that the defendant acted

with the necessary intent. *See Chavez*, 683 F.3d at 1108-09 (citing *Iqbal,* 556 U.S. at 678). The

following allegations seem pertinent in this respect:

- The defendants "implemented a scheme through which they disguise their
  customers' long-distance calls as local calls, . . . and thereby evade their obligations
  to pay" the mandatory fees. (ECF No. 1 at 2, 9 [¶ 28] [fuller description of
  "scheme"]);

- The defendants have "game[d] the system" to avoid FCC regulations requiring
  payment of fees to the plaintiffs. (*Id.* at 10 [¶ 30]);

- The defendants have not complied with a prior judgment finding them liable for
  unpaid fees. (*Id.* at 12 [¶ 38]); and

- Defendant Zhao "conceived, intended, and used" 88 Connection "as a device to
  avoid individual liability." (*Id.* at 13 [¶ 42]).[19]

---

[18] This string cite, with its parenthetical case descriptions, is reproduced *verbatim* from *Politte*.

[19] Though, as the defendants rightly suggest, this particular allegation can take on sinister connotations
only in the context of other alter-ego allegations (such as undercapitalization, commingling, and so
on). The core and legitimate purpose of incorporation, after all, is to limit personal liability for
business ventures. The court is aware of the nuance.

The court therefore will not dismiss the plaintiffs' alter-ego claim for failure to allege bad faith or fraudulent intent.

### 2.   Inequitable Result

The defendants also contend that the plaintiffs have not adequately pleaded an "inequitable result" that would follow from treating the challenged acts (the failure to pay the requisite fees) as the acts of 88 Connection alone. More specifically, the defendants argue that the corporation's mere failure to pay what it owes, and the subsequent difficulty that the plaintiffs have had in enforcing the prior judgment, "alone does not amount to an inequitable result." (ECF No. 19 at 14 [¶ 28]; ECF No. 25 at 12-13 [¶¶ 36-38]).

Here, too, the case law is slightly inconsistent. On balance, though, the law indicates that the plaintiffs have alleged facts showing that failing to pierce the corporate veil would yield an "inequitable result" within the meaning of California alter-ego doctrine.

The California Court of Appeals put the relevant point rather strongly in 2013. Where the debtor corporation had had no substantial assets since the start of the lawsuit, and where the individual defendants were in "complete control" of the company's assets, and had misused the corporate form, that the plaintiff had been "unable to collect its judgment" was an inequitable result for purposes of alter-ego doctrine. *Relentless Air Racing*, 222 Cal. App. 4th at 816. The appellate court underscored the point: "Given the trial court's finding that the" individual and corporate defendants were "one and the same," the court held, "*it would be inequitable as a matter of law* to preclude [the plaintiff] from collecting its judgment by treating [the defendant corporation] as a separate entity." *Id.* (emphasis added). The appeals court thus reversed the trial court's contrary holding on the "inequitable result" issue. *Id.*

The apparently contrary law that the defendants cite, on closer inspection, requires no different conclusion. Thus, in *Sonora Diamond*, the California Court of Appeals held that the challenged corporation's "inability to meet" its payment obligations to the plaintiff did not amount to "misconduct or injustice" under the "inequitable result" head of the alter-ego doctrine. *Sonora*

*Diamond*, 83 Cal. App. 4th at 539. In language that the instant defendants lean on, the *Sonora Diamond* court wrote:

> The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.

*Sonora Diamond*, 83 Cal. App. 4th at 837 (citing *Associated Vendors*, 210 Cal. App. 2d at 842) (quoted at ECF No. 19 at 15 [¶ 33]); *see also* (ECF No. 25 at 12-13 [¶ 38]) ("The purpose of the [alter-ego] doctrine is not to protect every unsatisfied creditor . . . .").

One of the cases from which *Sonora Diamond* drew this lesson, however — *Associated Vendors* — expressed a subtly but (for present purposes) critically different rule. In what may be a gloss at the very end of its decision, *Associated Vendors* indeed said that, "[t]he purpose of the [alter-ego] doctrine is not to protect every unsatisfied creditor." *Associated Vendors*, 210 Cal. App. 2d at 842. That case's point, however, was that the inability to satisfy a creditor can be inequity (for alter-ego purposes) only if the doctrine's first prong (unity of interest) is also satisfied. *See id.* The *Associated Vendors* case says this almost overtly: "[T]he prerequisite of 'inequitable result' must coexist with the other requirement of unity of interest and ownership, which the trial court found not to exist in this case." *Id.* So, contrary to how the instant defendants use the language from *Sonora Diamond*, it is not that the failure to satisfy a creditor cannot be inequity, full stop; it is that the inability to pay a creditor, *standing alone*, cannot be inequity — but may be if it occurs in connection with a "unity of interest."

Furthermore, some cases indicate that disregarding corporate formalities can itself yield sufficient inequity for alter-ego purposes. That there is, in other words, some overlap between the unity-of-interest and inequitable-result heads of the alter-ego analysis. The district court in 2012's *Politte* thus wrote: "With respect to the second general requirement for alter-ego, '[t]he kind of "inequitable result" that makes alter-ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate structure to creditors.'" *Politte,* 2012 WL 965996 at *11 (quoting *Orloff*, 819 F.2d at 909 and citing, *inter alia*, *RRX*, *supra*, and *Am. Home Ins. Co. v. Travelers Indem. Co.*, 122 Cal. App. 3d 951, 966-67 (1981)).

The plaintiffs here claim that the defendants have "not paid" them the FCC-mandated fees. The plaintiffs allege that the defendants avoided these fees through a "scheme" that "disguised" the true nature of their customers' phone calls, using an undercapitalized corporation that defendant Zhao fully controlled and whose corporate assets he "diverted" for his personal use "to the [plaintiffs'] detriment." (*See generally* Compl. – ECF No. 1, *passim.*) This sufficiently alleges an "inequitable result" for purposes of pleading alter-ego liability.

### 3.  This Is Not A Merits Inquiry

The defendants often argue as if the complaint's allegations must prove all the doctrinal elements, and address all the potential subsidiary considerations, of alter-ego liability. (For an example of this, see especially [ECF No. 25 at 8-11].) This is not so. *Cf. Iqbal*, 556 U.S. at 678 (pleading standard "does not require 'detailed factual allegations'") (quoting *Twombly*, 550 U.S. at 555); *Century Aluminum*, 729 F.3d at 1107 (required factual specificity will vary depending on context). The defendants' arguments, in this respect, go beyond what is appropriate to a pleadings challenge to attack more deeply the substance of the plaintiff's claim. But notice pleading does not require a plaintiff to prove its whole case in advance. Though that is the direction in which the defendants' argument often tends. The defendants themselves suggest the error of their approach. At one point they write: "[T]he parties are only at the pleading stage. Whether or not the plaintiffs have evidence to prove their allegations is not in issue at this time." (ECF No. 25 at 11 [¶ 34].) That statement is correct. It also runs counter to much of the defendants' argument and, indeed, undercuts that argument, showing it to be inapposite at this stage of the case. The plaintiffs' complaint sufficiently alleges alter-ego liability. *See, e.g., Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 678) ("claim has facial plausibility" when allegations permit "reasonable inference that the defendant is liable for the misconduct alleged").

### 4.  Post-Judgment Liability — The Plaintiffs Need Not Amend Their Complaint

In their motion to dismiss, the defendants wrote: "[I]t is not clear whether the complaint is alleging that Mr. Zhao is responsible for the prior judgment [of September 29, 2014] as well as the

violations of the injunctive order or for just post judgment damages." (ECF No. 19 at 6.) The

defendants argued that the plaintiffs should clarify the period for which they were seeking

damages from Mr. Zhao through an alter-ego theory. (*Id.* at 21-23.)

In their opposition the plaintiffs respond:

> Plaintiffs seek monetary damages for losses they have incurred since September
> 2014 (when the United States District Court for the Southern District of California
> entered judgment against 88 Connection) as a result of Defendants' continuing
> failure to pay for "switched access service" charges due to the [plaintiffs] pursuant
> to their federal tariffs. Plaintiffs also seek declaratory . . . [and] injunctive relief . . .
> .
>
> . . . .
>
> [T]he Complaint . . . does not seek to bind Zhao to the prior default judgment, but
> rather seeks damages caused by Zhao and 88 Connection since that default
> judgment. The Complaint specifically notes that Plaintiffs will seek to add Zhao to
> the prior judgment in the *separate* action [*i.e.,* in the Southern District of
> California] — and not through this Complaint . . . .

(ECF No. 22 at 4, 6) (record citation omitted) (emphasis in original).

The defendants reply that the plaintiffs should amend their complaint to clarify that they are

seeking only damages that were incurred after the prior judgment. (ECF No. 25 at 2-3.) This is not

necessary. The plaintiffs' representation is sufficient to so limit their relief.

### CONCLUSION

The court denies the defendants' motion to dismiss. This disposes of ECF No. 19.

**IT IS SO ORDERED.**

Dated: June 14, 2016

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California